```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF DELAWARE

 3

 4   ECHOLOGICS, LLC, MUELLER         )
     INTERNATIONAL, LLC, and          )
 5   MUELLER CANADA, LTD d/b/a        )
     ECHOLOGICS,                      )
 6                                    )
                      Plaintiffs,     )
 7                                    ) C.A. No. 19-2036-RGA
     v.                               )
 8                                    ) JURY TRIAL DEMANDED
     ORBIS INTELLIGENT SYSTEMS, INC.,)
 9   and AQUAM USA, INC.,             )
                                      )
10                    Defendants.     )

11

12                                    J. Caleb Boggs Courthouse
                                      844 North King Street
13                                    Wilmington, Delaware

14                                    Thursday, February 25, 2021
                                      9:02 a.m.
15                                    Videoconference

16   BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

17   APPEARANCES:

18              MORRIS JAMES, LLP
                BY:  KENNETH L. DORSNEY, ESQUIRE
19
                          -and-
20
                TAYLOR ENGLISH DUMA LLP
21              BY:  COBY S. NIXON, ESQUIRE
                BY:  TODD E. JONES, ESQUIRE
22
                          -and-
23
                MUELLER INTERNATIONAL, LLC
24              MUELLER CANADA, LTD
                BY:  CHASON CARROLL, ESQUIRE
25
                                    For the Plaintiffs
```

1    APPEARANCES CONTINUED:

2                    POTTER ANDERSON & CORROON LLP
                     BY:  STEPHANIE O'BYRNE, ESQUIRE
3
                             -and-
4
                     KILPATRICK TOWNSEND & STOCKTON LLP
5                    BY:  A. JAMES ISBESTER, ESQUIRE

6                                  For the Defendants

7
                         ***  PROCEEDINGS  ***
8

9                    THE COURT:  Good morning.  This is Judge

10   Andrews.  Can you hear me?

11                   MR. DORSNEY:  Yes, Your Honor.

12                   MS. O'BYRNE:  Yes, Your Honor.

13                   THE COURT:  Okay.  And I see my deputy clerk is

14   on the line.  Can you hear me?

15                   DEPUTY CLERK:  Yes, Judge.

16                   THE COURT:  And I see my court reporter is on

17   the line.  Can you hear me?

18                   THE REPORTER:  Yes, Judge.

19                   THE COURT:  All right.  And I see Ms. O'Byrne

20   and Mr. Hitch, I believe.

21                   In any event, Ms. O'Byrne, which side are you

22   on?

23                   MS. O'BYRNE:  Defendants, Your Honor.

24                   THE COURT:  And who's with you?

25                   MS. O'BYRNE:  James Isbester from Kilpatrick

1    Townsend.

2               THE COURT:  Okay.

3               MR. ISBESTER:  Good morning.

4               THE COURT:  Okay.  And Mr. Isbester, are you in

5    Atlanta, San Francisco, or someplace else?

6               MR. ISBESTER:  I'm actually in the attic of my

7    garage in Berkeley, California.  I'm in the San

8    Francisco area.

9               THE COURT:  Okay.  Sorry about the timing of

10   this.

11              MR. ISBESTER:  Oh, not at all.

12              THE COURT:  All right.  And I'm sorry --

13              MR. DORSNEY:  Your Honor, it's Ken Dorsney for

14   plaintiff.  I dialed in.

15              THE COURT:  Oh, okay.  So good morning,

16   Mr. Dorsney.

17              MR. DORSNEY:  Good morning.

18              THE COURT:  And who have you got with you?

19              MR. DORSNEY:  I have Chason Carroll from

20   Mueller's deputy general counsel along with co-counsel Todd

21   Jones and Coby Nixon from Taylor English.

22              THE COURT:  All right.  So I wanted to have this

23   conference so I could ask a few questions, but also partly

24   so I could see whether there was something I could do to

25   help resolve this amicably.  And so I was thinking that

 1    unless somebody wants to say something first, I would go

 2    ahead and ask my questions.

 3            Is there anything anybody wants to say before I

 4    do that?  I guess not.

 5            MR. JONES:  No, Your Honor.

 6            THE COURT:  Okay.  So plaintiff, and I don't

 7    know because there are two gentlemen on the screen, and they

 8    don't have names which one is Mr. Jones.

 9            Okay.  Mr. Jones, are you the one going to be

10    speaking for your side?

11            MR. JONES:  Actually, Mr. Nixon is.  I may jump

12    in, if that's allowable.

13            THE COURT:  Yeah, I have no problem with that.

14            So Mr. Nixon, okay.  So does plaintiff have a

15    good faith belief right now that defendant's product

16    infringes?

17            MR. NIXON:  So the product that Orbis has

18    represented that it is delivering to its customers with the

19    sticker, with an optional sticker covering the antenna,

20    Mueller's willing to dismiss with prejudice as to that

21    particular product and as to the two patents that are

22    asserted in this case.

23            THE COURT:  Okay.  So that seems like a slightly

24    different position than I saw in the papers that I looked

25    at.  Am I missing something?

1          MR. NIXON:  Really I think -- so the parties, as

2     we indicated in the briefing, discussed for several weeks,

3     negotiated a potential settlement or dismissal of the case.

4     And I think one of the sticking points was the scope of

5     products that would be -- the parties were negotiating it in

6     the context of a covenant not to sue going forward.  And so

7     one of the key disputes or impasses was the scope of

8     products that would be subject to that covenant not to sue.

9          So Mueller, you know, is willing to, again, now

10    have this case dismissed with prejudice or have a covenant

11    not to sue that's limited to the particular product, the

12    current -- I'll just call it the current design with the

13    optional sticker.

14          THE COURT:  So let me just interrupt a second

15    because my understanding is that by operation of law, if you

16    get a non-infringement finding as to a product, that may

17    have collateral consequences down the road for products that

18    are not indistinguishably different or some language like

19    that.  But of course, until you have that product, it's hard

20    to tell.

21          Is my understanding of the law generally right?

22          MR. NIXON:  I think so, Your Honor.  Right.

23    This is an issue we haven't briefed or flushed out entirely,

24    but that is my understanding.  I think the language is

25    essentially the same that the second product or the accused

1   product in a second lawsuit is essentially the same then

2   claim preclusion would --

3                    THE COURT:  Okay.  So I'll come back to you, but

4   let me ask Mr. Isbester.  Do you have another product that's

5   actually available right now or is the product that's

6   available right now the one that Mr. Nixon just said they

7   were willing to dismiss with prejudice against?

8                    MR. ISBESTER:  The only product we have

9   available right now is the one that Mr. Nixon indicated

10  willingness to dismiss with prejudice.  And frankly, this

11  was worth teeing up for.  That's all we want.

12                   THE COURT:  Have I solved the problem?

13                   MR. ISBESTER:  You have solved the problem, Your

14  Honor.

15                   THE COURT:  Mr. Nixon?

16                   MR. NIXON:  So I think if -- part of the

17  negotiations were what Mueller was willing -- if we're going

18  to agree to a dismissal with prejudice, Mueller prefers to

19  eliminate that ambiguity of essentially the same so that

20  we're not -- if there are modifications made to this product

21  down the road such that Mueller thinks, you know, now we've

22  got a different product here, you know, we wouldn't want to

23  be in a fight over whether the product is essentially the

24  same or not.

25                   THE COURT:  But you know, the problem with that,

1    Mr. Nixon, is you can't.  You can't eliminate the ambiguity

2    because it depends on what they produce in the future;

3    right?  I mean, theoretically, how would -- you know, and

4    maybe that between the two of you, you know, coming to a

5    negotiated agreement, you know, you could come up with

6    something that maybe helped in that regard.  But in terms of

7    a disagreement, you know, if I granted the defendant's -- if

8    I let them file a motion for summary judgment, if I granted

9    it, you would be in exactly that position.  It wouldn't help

10   you down the road; right?

11           MR. NIXON:  I think if we, you know, agreed to a

12   dismissal with prejudice and had some language in there

13   stating that it's limited to this current product, that

14   would be, you know -- that would, you know, cabin the

15   preclusive effect going forward.  That would be better

16   than -- and from Mueller's perspective, that would be better

17   than just either a summary judgment ruling or a dismissal

18   with prejudice full stop.

19           THE COURT:  Yeah, but that's other than to

20   say -- you know, I had this come up in some case a few years

21   back, something very much like this or at least something

22   that, to my memory, was very much like this, and that's what

23   I concluded.  The time which is -- you know, it's kind of

24   operation of law what would be precluded down the road.  And

25   you know, if you're in a position where you're dismissing

1    with prejudice against this product, that does have some

2    ripple effect, but it's the exact same ripple effect that

3    would happen if you lost a summary judgment motion on this

4    product.  And if, as it seems to be the case, you've

5    concluded that this product doesn't infringe, I think you're

6    trying to get something that is more than what you would get

7    if you just litigated and lost.

8              MR. JONES:  Yeah, I believe you're correct, Your

9    Honor, but we would -- you know, if we're going down the

10   summary judgment route, then we would need a lot of --

11             THE COURT:  Well --

12             MR. JONES:  -- additional discovery.  As we said

13   in our papers, you know, we've seen pictures of this product

14   with the sticker peeling off, our customers covering it.

15   You know, have they gotten certification for this model of

16   their product with the sticker?  You know, there are a lot

17   of questions we have that if we were -- if we need to go

18   that route all the way to a summary judgment ruling, then

19   there's a lot we would want to do before we take -- before

20   we concede that we would lose on such a summary judgment.

21             THE COURT:  Well, and I'm not -- I mean, you

22   know, part of the reason that I wanted to have this

23   conference is even if Mr. Isbester thinks the summary

24   judgment would be a slam dunk, it still takes me a lot of

25   time to get to that point.  That's leaving aside you all

1    doing discovery and more contentions of one kind or another,

2    getting experts or whatever.

3              So you know, the way you're portraying it to me

4    right now, I'm thinking that what you ought to do is --

5    well, let me just ask one question.

6              So Mr. Isbester, if the plaintiff dismisses

7    against your current product with prejudice, is it

8    understood that you're not going to be asking for attorneys'

9    fees thereafter?

10             MR. ISBESTER:  I think -- I have no express

11   direction from my client on that point, but Your Honor, that

12   if we could have this matter resolved today, my client would

13   be happy to see this in the rearview mirror and never

14   consider any other claims.

15             If it goes further, if it does go to summary

16   judgment, whether before or after extensive discovery, I

17   think that question becomes a very real concern because we

18   don't believe that this is a case in which the plaintiff has

19   a good faith basis to believe the product infringes and fees

20   would be appropriate.  But if we could get it done today,

21   then I believe that will be the end of the case.

22             THE COURT:  Well, okay.  I mean, I guess part of

23   the reason I brought that up was just because it seemed to

24   be, I don't know, maybe implicit in what Mr. Nixon was

25   saying that or had started off by saying was that it would

1    end upon the filing of a motion to dismiss, and it's good to

2    make sure that we sort of all have the same understanding.

3                    MR. ISBESTER:  Your Honor, if I may respond to

4    what Mr. Nixon's (inaudible) --

5                    THE COURT:  Okay.  So Mr. Isbester, for some

6    reason or another, your connection all of a sudden seems to

7    have gotten not so good.

8                    MR. ISBESTER:  Can you hear me now?

9                    THE COURT:  Yes.

10                   MR. ISBESTER:  Yes.  Okay.

11                   The concern seems to be and, you know, to go

12   back to your question just now, the original expectation, at

13   least on our side of the fence, was that once we had

14   provided this discovery, in other words, see that there was

15   no infringement, then the case would be resolved.  That

16   would be it.  And we weren't looking for fees, or costs, or

17   anything at that point, and it's still our hope that that's

18   the way we can proceed.

19                   The effect of a dismissal without prejudice is

20   dilatory to the company for the reasons we've set forth in

21   the papers.  The effect of a dismissal with prejudice is

22   that we would then be applying to any product yet unborn the

23   standard collateral estoppel and res judicata principles

24   that apply to a dismissal with prejudice.  And we would be

25   taking on the risk that perhaps new design, if there were

1   such a thing, was sufficiently different from the old design

2   that we were exposed to claimed infringement.

3           And conversely, if we stayed within -- the

4   language I have heard is that the term substantially the

5   same for infringement analysis purposes -- if we stayed

6   within that yard, the scope of the dismissal with prejudice

7   would protect the company.

8           So I don't think there's a need for everybody

9   here today to start going through all the different possible

10   future designs that nobody has contemplated, nobody has

11   brought to market, and try and figure out how to draft

12   language that would limit the scope of a dismissal with

13   prejudice to cover that future design possibility.  I think

14   the law provides exactly the cabining that Mr. Nixon is

15   looking for.

16           THE COURT:  You know, my opinion, and perhaps I

17   haven't thought about this enough to even really have an

18   opinion, but my opinion is, and there's always going to be

19   some gray area, and that's something that as in business,

20   the business side of what your two companies do, you have to

21   work around that or you have to contemplate that and take

22   your best shot at it, and whatever happens, happens.

23           So I guess what I'd like to know, and it kind of

24   goes back to what Mr. Nixon said at the beginning, is it

25   seems to me, based on listening to what you're saying,

1    everybody's saying, and not considering the actual

2    underlying merits of whether or not Orbis' product infringes

3    or defendant's product infringes because, frankly, I get

4    your two names mixed up.  That's what I'm kind of trying to

5    avoid having to do, so I don't really have an opinion about

6    that.  I'm just kind of reading off of the way you all are

7    talking.

8             So what I think is that plaintiff, that you

9    ought to have an understanding, which you can confirm

10   without me being present, that the plaintiff will dismiss

11   the suit against whatever the identified accused product is

12   with prejudice.  And defendant is not going to seek any

13   attorneys' fees, costs.

14            I mean, in other words, this is essentially a

15   settlement.  But one of the aspects of the settlement is

16   that, kind of like Mr. Isbester said, is that there's going

17   to be some zone of protection, which is whatever the

18   protection is that comes by law to the defendant's future

19   attempts in this market.

20            So in any event, I think that's agreeable with

21   Mr. Isbester.  Is that agreeable with you, Mr. Nixon?

22            MR. NIXON:  Just a couple points there, and

23   again, you know, we haven't briefed or gotten into the claim

24   preclusion issues here, but there is a recent decision from

25   the Federal Circuit where it says that settling parties

1    remain free to limit the preclusive effect of a dismissal.

2    There was an argument over the scope of preclusive effect

3    and basically the Federal Circuit kind of faulted one party

4    saying, you know, you voluntarily dismissed.  You could

5    have, you know, cabined that preclusive effect in that

6    dismissal, but you didn't.  And so that's -- Mueller's

7    approach here is we -- you know, if we're agreeing to a

8    dismissal with prejudice, we would want it to be limited to

9    the two asserted patents at issue in the case and then

10   limited to the current product.

11           And you know, in terms of who bears the

12   uncertainty going forward, you know, just step back and note

13   that this lawsuit was filed on a product that appeared to --

14   on the original design of a product that, you know, looks

15   like it would have infringed these patents.  If Mueller

16   feels justified in protecting its intellectual property to

17   this lawsuit, Orbis has redesigned the product.  After much,

18   you know, discussion, Mueller is willing to agree to this

19   dismissal.

20           I think going forward there is this concern that

21   the product will be modified either by Orbis or by

22   customers, and we think that, you know, Orbis should bear --

23   if they make design changes that have nothing to do with

24   these patents, then obviously there's no concern.  But if

25   there are modifications to further protect the antenna on

1    the product, you know, we think that product should be fair

2    game and not subject to an argument over is this essentially

3    the same or not.

4              THE COURT:  All right.  Well, so I think it's

5    certainly reasonable to say that the lawsuit dismissal is

6    limited to the two patents you have asserted; right?

7              Do you agree with that, Mr. Isbester?

8              MR. ISBESTER:  Absolutely.

9              THE COURT:  But you know, but I don't understand

10   Mr. Nixon, perhaps it's just lack of imagination on my part,

11   how exactly you would -- would you be proposing to change

12   the law's effect on dismissal with prejudice?

13             I mean, in other words, there's law out there.

14   You know, we've all kind of talked about it without knowing

15   precisely exactly what it is or just maybe speaking for

16   myself.  You know, I'm not wild about this idea, but I do

17   want to understand what it is you're saying.

18             How would you say what you're saying?  You know,

19   if they -- just tell me.

20             MR. NIXON:  Sure.  And again, I think this is --

21   I think it would be acceptable and proper, you know, right,

22   the operation of law is one thing if it was just a dismissal

23   with prejudice full stop.  But if there is language in the

24   dismissal, you know, limiting it to these two patents and

25   limiting it to the product shown in Exhibit B, right, you

1    know, or Exhibit A that we attach, and this is what we were

2    attempting to do in our settlement agreement, last

3    settlement agreement that the parties negotiated was show

4    the product, you know, identify the product as best we can

5    in that filing or in that pleading and say that's the

6    product that with prejudice applies to.

7              THE COURT:  But I guess what I'm wondering is,

8    and I think, again, I'm guessing Mr. Isbester doesn't object

9    to your saying it's this product.  But the thing is saying

10   it's this product, unless you're then adding the language,

11   and it's exactly this product, and if you change one comma

12   in it, it doesn't count.  Then by saying it's this product,

13   you're in the operation of law that if they do some, you

14   know, substantially the same down the road or not

15   insubstantially different, whatever the standard is, that's

16   going to be covered by your dismissal.  Right?

17             So I guess what I'm wondering is saying, you

18   know, we'd like to attach a photo and identify the product

19   specifically, that seems to be not inconsistent with what

20   Mr. Isbester wants.  But unless you're saying and the normal

21   Federal Circuit law doesn't apply, there's still going to be

22   some zone down the road that, you know, Orbis can change

23   things and it may -- and if there was a lawsuit, it may be

24   that whatever changes that were made would be, you know, not

25   insubstantially different or whatever the standard is.

1   Right?

2                    MR. NIXON:  I mean, I will say the other thing

3   that we were doing in connection with our settlement

4   agreement, Mueller put in for the ordinance of doubt was

5   describing modifications that shall be deemed a different

6   product basically relating to -- so I think there are some

7   examples that could go in to give some certainty on

8   particular things that we can think of right now.

9                    THE COURT:  All right.  Mr. Isbester, these

10  modifications, or modifications is not the right word.

11  These things Mr. Nixon is talking about in the proposed

12  settlement agreement where they were saying, as I understand

13  it, if you do "X", that makes that or, you know, I don't

14  exactly know what Mr. Nixon -- obviously, I don't know what

15  was exactly in the settlement agreement.  But assuming it

16  said if you do "X", that's not substantially the same,

17  what's your take on that?

18                   MR. ISBESTER:  So I think the concern is

19  two-fold.  First of all, let me say as a predicate, it's a

20  little unusual for us to be discussing what the parties have

21  proposed to each other by way of settlement.  I will try to

22  speak a little bit to the hypothetical situation.

23                   We would not want a resolution of this case that

24  in any way precludes future owners of either Orbis or the

25  business that Orbis is building around the SmartCap from

1    deriving the benefit of that dismissal with prejudice.   In

2    the same way that if there were a summary judgment or a jury

3    verdict upheld, and that type judgment, somebody who later

4    acquired the SmartCap product, either by acquiring just the

5    business or acquiring the entire company, would gain some

6    protection by virtue of that earlier decision.   And I think

7    that has been spelled out in the law, and we don't need to

8    try and renegotiate, recreate that scope of the impact of

9    whatever resolution we arrive at here.   That's already a

10   legal principle that's well established and clear.

11           Whenever we start speaking about modifications,

12   we then immediately get into, okay, what is the exact nature

13   of the modification?   For example, we know that the sticker

14   is -- I think it's like nine-one-thousands of an inch thick.

15   Is eleven-one-thousands of an inch thick?   I don't know.

16           I don't know where all those modifications might

17   go, and so I worry that in trying to identify modifications

18   in advance, we are creating problems that really can't be

19   solved until we actually know of a modification that the

20   company wants to implement and would have some effect on the

21   patent analysis.   And that is why we've simply been saying

22   the law is -- there's sufficient protectant on that.

23           Now, if there were -- if it was dismissed with

24   prejudice, we're limited to just these two patents which I

25   think is absolutely appropriate and just the existing

1    SmartCap product which would be the product that we would

2    present to the Court for a motion for summary judgment.  And

3    if there is some specific modifications that plaintiff has

4    in mind that either is within or constitutes the line in the

5    sand beyond which a new infringement count can be brought

6    then, you know, I think we could work with that.  But beyond

7    that, I'm not -- I'm worried that anything we come up with

8    is going to be an incomplete solution and it's just going to

9    be -- simply change the nature of the debate from whether or

10   not there is infringement to whether or not the product

11   complies with the modification language that is provided in

12   whatever dismissal is entered.

13              THE COURT:  All right.  Thank you, Mr. Isbester.

14              So let me just say one thing because

15   Mr. Isbester brought something up that I'm at least somewhat

16   conscious of which is if either side thinks some time after

17   today that I've involved myself too much in talking about

18   your positions or essentially trying to settle this case,

19   you know, just write me a letter, and I'll get it reassigned

20   to a different judge if you're going to go forward and

21   litigate.  You know, I don't want to -- you know, I

22   recognize what Mr. Isbester said is a legitimate concern.

23              So that being said, here's what I think you

24   ought to do.  I think you're very close.  And maybe this is

25   where you were before you started writing briefs and letters

1   asking for summary judgment, but it seems to me that the

2   plan ought to be, and I don't think it's going to be

3   resolved today probably, but the plan ought to be, you know,

4   plaintiff dismisses with prejudice as to these two patents

5   against this product.  And you ought to spend, you know, a

6   day, or two, or whatever you need debating or talking to

7   each other about whether or not there is some what I think

8   Mr. Isbester called line in the sand.

9           If there's something you can do that's mutually

10  agreeable to identify what that line in the sand is, okay,

11  well, that would seem like a good thing.  You know, whether

12  or not it can be done, I have no idea, and that would be way

13  beyond any useful contribution I could make, I think.  And

14  you know, based on what you're both saying, it seems to me

15  that it's in your interest, both sides' interest to resolve

16  this case now.  But I think the final step needs to be taken

17  by you all.

18          And I guess I should say, Mr. Nixon, do you have

19  anything further to add after what Mr. Isbester just said?

20          MR. NIXON:  I do want to give Mr. Carroll,

21  Mueller's representative deputy general counsel an

22  opportunity.  I think he wanted to make a comment.

23          Is that right?

24          MR. CARROLL:  Yes, Coby.  Your Honor, if you

25  would allow me to make some quick comments?

```
 1                    THE COURT:  Sure.  Go ahead.

 2                    MR. CARROLL:  First, Your Honor --

 3                    THE COURT:  Actually, just hold on a second,

 4       because I lost track.  What is your name, sir?

 5                    MR. CARROLL:  First name is Chason, C-H-A-S-O-N.

 6       Last name Carroll, C-A-R-R-O-L-L.

 7                    THE COURT:  Okay.  And let me just ask:

 8       Mr. Isbester, you don't object to me letting Mr. Carroll

 9       speak, do you?

10                    MR. ISBESTER:  No, not at all, Your Honor.

11                    THE COURT:  All right.  Go ahead, Mr. Carroll.

12                    MR. CARROLL:  Thank you.  And first of all, let

13       me say, Your Honor, thank you for participating in this

14       hearing because, you know, we litigate a lot, and I think a

15       lot of cases can be settled without all this hoopla.

16                    But I think this case, and the reason Mr. Nixon

17       and Mr. Jones are putting these arguments forward is because

18       we feel like this case is about this product, not about this

19       product modified.  And we think the onus, and the

20       uncertainty, and the fit of any changes and modifications

21       should be on the defendant, not us, right.  And if we get

22       into a settlement agreement where we have substantially

23       similar language or other things of that nature, it puts us

24       in a contract, breach of contract context, not an

25       infringement context.  It's a different body of law, and
```

1    it's a different damages analysis.  It's a completely

2    different issue.

3            So that's why Mueller is a little hesitant to

4    enter into a settlement agreement with the defendants

5    because we've seen the product.  They've made the product

6    that infringes, without a doubt.  And we know that they have

7    customers they've talked to about it because we've talked to

8    the same customers, our customers.

9            So we see things in the future causing us to

10   have to come back to the court if they make modifications.

11   And look, this is business.  You know, we have all the

12   attorneys on the phone because you guys live in the legal

13   world.  We live in the business world.  And it's all

14   practicality.  Right.

15           If they change the thickness of the sticker,

16   first of all, we're not going to know.  We're not going to

17   care.  But it's -- we know the product they make today, Your

18   Honor, doesn't work.  It's not going to work.  And they know

19   that it's not going to work.  And we see in the future

20   they're going to make a modification which is going to cause

21   an issue and cause us all to come back to court.

22           So if we look at this product, we're happy to

23   say you're right, the way you make the product today, we're

24   happy to dismiss this case.  But as Mr. Nixon said earlier,

25   without us having discovery to see actually what they're

1     doing behind the scenes, what they're planning to do next

2     year, it's hard for us to say that you're not infringing

3     today.  I mean, they could be infringing today, we just

4     haven't seen it because they haven't provided us any

5     discovery for us to look at.

6                So you know, again, I think the biggest issue we

7     have is we're happy to dismiss this case with these patents

8     on that product.  And I understand, Your Honor, you know,

9     the law, if we go through summary judgment and through

10    trial, the law around infringement analysis is slightly

11    different than the analysis around breach of contract.  And

12    that's our concern.

13               So if the defendants are willing to say, hey,

14    this product, let's dismiss this case right now, I'm willing

15    to say right now, we'll go ahead and do that right now.  We

16    don't have to negotiate for two days, three days.  If they

17    want to say that product as is, I can represent Mueller

18    saying we will go ahead and sign that right now.

19               But if they want leeway, if they want to change

20    things, if they want modifications and to throw us back into

21    litigation over a breach of contract, that is something that

22    our management just wants to avoid, honestly.  That's why

23    we're trying to get this settled.

24               THE COURT:  I have to say Mr. Carroll --

25    Mr. Carroll, can you mute yourself?

 1                    MR. CARROLL:  Your Honor, you broke up.

 2                    THE COURT:  There's now my echo, and I'm

 3       thinking that's because you unmuted.

 4                    MR. CARROLL:  Oh, unmute.

 5                    THE COURT:  And I'm thinking if you mute, there

 6       won't be this echo.  So I have to say, Mr. Carroll, it

 7       doesn't sound like you and Mr. Nixon are on the same page

 8       because I think he's just been asking for what you've just

 9       said you don't actually want.  And it seems to me that

10       you're more on the same page as Mr. Isbester.  Because I'm

11       taking it you don't want to have stuff in a dismissal, you

12       want, or what I think I heard you say, Mr. Carroll, and I

13       apologize if I got it wrong, was you're happy to dismiss

14       against this product on these two patents with prejudice

15       today, end of story.  Am I right?

16                    MR. CARROLL:  Yes, sir, that is correct, but the

17       issue we have is defendant would like to say they can make

18       modifications that are substantially similar to the product

19       today which that gets us back into the we're going to be

20       back in court next week when they make a modification.

21                    THE COURT:  But the way that you have proposed

22       it, they can make modifications next week.  And the

23       modifications that they make, you know, then there's a

24       judgment call.  First, there's a judgment call on their part

25       about the modifications they make.  And then there's a

1    judgment call on your part about whether those modifications

2    now infringe these two patents or some other patents you

3    have.  Right?

4              MR. CARROLL:  Yes, Your Honor, but at that point

5    we're in a breach of contract context, not an infringement

6    context, which is a completely different analysis from a

7    damages standpoint.  And you're right, they have to make the

8    judgment.  We have to make the judgment.  And you know,

9    business people seem to be reasonable.  And the reason we

10   filed this case is they offered for sale products that

11   infringe.  That's what started this entire thing.

12             Now, they've recently backed off of that, but

13   nothing stops them from making modifications in the future

14   to create that problem again.  So -- and I guess, Your

15   Honor, what I'm trying to say is if we want to get this off

16   your docket, if we want to close this case out, it's very

17   easy.  It's very easy for us to say these two patents, your

18   product, and that's it.

19             And if there's modifications in the future,

20   whether we go through summary judgment, whether we go

21   through settlement, you have the same analysis.  The only

22   difference is we can close this out today by agreeing to

23   these terms and be done versus, okay, we can negotiate for

24   days or weeks to get a settlement agreement that is going to

25   have the same ambiguity as we're going to have with the

1    claim preclusion in a year if they make changes in a year

2    after summary judgment.

3            So I guess what I'm trying to say is by agreeing

4    to the settlement agreement today saves everybody time and

5    money and puts us in no worse situation than a year or two,

6    four, six after litigation.

7            THE COURT:  All right.  So let me turn it back

8    over to Mr. Nixon.  Do you have any comment?

9            MR. NIXON:  Yes, Your Honor.  I'll try to maybe

10   clarify where Mr. Carroll and I are on the same page.  And

11   when Mr. Carroll says, you know, that Mueller is willing to

12   dismiss with prejudice as to these two patents and this

13   product, I think the proposal is a dismissal, not a

14   settlement agreement, but a dismissal that has the language

15   of which with prejudice, but is expressly limited to these

16   two patents and this product such that it cabins the

17   preclusive effect that would otherwise happen as a matter of

18   law.

19           I think, you know, when Mr. Carroll says we

20   don't want them to have -- we don't want Orbis to be allowed

21   to modify going forward, and they should bear the burden if

22   they modify, whether that's a problem or not, I think what

23   Mr. Carroll is suggesting is rather than having a with

24   prejudice dismissal operate as a matter of law, that

25   preclusive effect, that we would cabin that in this

1   dismissal as I proposed earlier, have a restricted dismissal

2   limited to this particular product.

3           THE COURT:  But in other words, are you saying

4   that your proposal is to dismiss with respect to this

5   product exactly as it is today and, you know, if there's one

6   comma that's changed, it doesn't apply?

7           MR. NIXON:  Yeah.  I think, as Mr. Carroll

8   articulated, if there are changes that -- the burden should

9   be on Orbis to identify what changes it has in mind going

10  forward.  You know, we're concerned with this product that

11  they have released right now.  And we're fine to dismiss as

12  to that particular product.

13          THE COURT:  But the thing is when you say what

14  changes they have in mind going forward, I assume it's kind

15  of a rolling process.  Presumably, they have engineers or

16  the like who have ideas from time to time.  And so they may

17  have some ideas now in mind now.  They may have some ideas

18  that occur to them tomorrow which is presumably --

19          MR. NIXON:  So we understand that.  So, you

20  know, a year from now, they may come up with a design change

21  and that change may have nothing to do with the patent.  It

22  wouldn't cause -- now, it may make it so that new -- that

23  that modified product is now outside of the effect of this

24  dismissal, but if it's a change that doesn't relate to the

25  patents then, you know, there's -- Mueller wouldn't care.

1   There's no harm here.

2           But that burden should be or that certainty, we

3   think Orbis should bear that.  So if they come up with

4   design changes later, it may, you know, take it outside of

5   the effect of this dismissal, but that's, you know --

6           THE COURT:  But I guess in a way, I guess the

7   other thing I'm wondering about is when you say they should

8   have the burden, so to speak, I take it in the normal kind

9   of thing where there's a follow-on product, you have to

10  prove -- the plaintiff would have to prove that it's not

11  substantially similar or whatever the language is?  That

12  they have to prove it is substantially similar, is that what

13  you mean?

14          MR. NIXON:  Well, so if we had a dismissal with

15  prejudice full stop, six months from now there's a design

16  change on the product, Mueller accuses it of infringement.

17  Now, not only, you know, Mueller obviously has the burden to

18  prove infringement, but now there's an issue:  Is it covered

19  under the prior dismissal or not?  Is it essentially the

20  same?  And we -- if Mueller is agreeing to a dismissal right

21  now, we would want to take that dispute off the table.  If

22  there's a design change, it's outside of the scope of

23  dismissal, and so now, you know, Mueller obviously still has

24  the burden of proof that it infringes, but there's no

25  argument over whether claim preclusion applies or not.

 1             MR. ISBESTER:  Your Honor, may I offer one

 2     observation here?

 3             THE COURT:  Sure.  Go ahead.

 4             MR. ISBESTER:  I think we are arguing about

 5     issues that lawyers have presented to judges in the past and

 6     it's pretty well cleared up.  Where there is a dismissal

 7     with prejudice in the future product that is somehow

 8     modified, plaintiff goes for infringement.  Defendants offer

 9     that as an affirmative defense, the defense of collateral

10     estoppel or res judicata.

11             It is then the defendant's burden to demonstrate

12     that the new modified product is within the umbrella of the

13     protection of the previous dismissal.  I don't think we need

14     a contract to do that.

15             THE COURT:  Well, and I -- right.  So you know,

16     I'm way beyond what I actually know here.

17             Do you, Mr. Nixon, agree with what Mr. Isbester

18     just said is kind of an analytical framework if there was a

19     subsequent suit down the road?

20             MR. NIXON:  I think that's probably right that

21     it would be defendant's burden to show -- to be a defense

22     on -- you know, the claim preclusion applies.  And I think

23     our proposal, you know, it would take that claim preclusion

24     defense off the table.  It would -- you know, we're not

25     arguing over whether it's essentially the same or not

1    because the -- because this dismissal is limited to the

2    product itself and does not encompass essentially the same

3    changes.

4              THE COURT:  All right.

5              MR. NIXON:  So basically it would eliminate that

6    defense.  That defense would not be available, that's sort

7    of our...

8              THE COURT:  All right.

9              MR. NIXON:  And I guess, you know, if we're -- I

10   mean, more discussion between the parties probably would be

11   helpful on this because, you know, an alternative to a

12   dismissal with this language would be a settlement agreement

13   with some sort of -- in the context of a covenant not to sue

14   as we were pursuing.  Maybe we can make some more progress

15   there.  There probably are a couple different ways we can

16   come at it.

17             MR. DORSNEY:  Your Honor, it's Ken Dorsney.  If

18   I could chime in just for a minute.  It may make sense to

19   spend some time working with the magistrate assigned, I'm

20   not sure if it's Judge Thynge or Judge Burke, to see if we

21   could not hammer out a term sheet to get this case

22   dismissed.

23             THE COURT:  And I don't know who -- I don't know

24   which magistrate judge -- actually, I think it might be -- I

25   don't know.  You know --

1          MR. DORSNEY:  Maybe Hall.

2          THE COURT:  -- it doesn't matter.  I mean, it

3    doesn't really matter.  I do remember because I was skimming

4    through the docket earlier today, and I do remember

5    seeing -- I thought it was assigned to some magistrate judge

6    other than Judge Thynge, but it didn't register any further

7    than that with me.

8          Well, look, you know, in a way, I feel, you

9    know, I at least better understand why you haven't so far

10   resolved this case.  I think it would make sense, both based

11   on what Mr. Dorsney said and what the other counsel have

12   said, to basically give you a further chance to speak to

13   each other and to try to resolve this, whether it's by the

14   dismissal without a settlement agreement, but with at least

15   the understanding that, you know, there's no question about

16   attorneys' fees.  In other words, completely resolve it.

17   And maybe you can't do that without it being called an

18   agreement, I don't know.

19          And you know, it makes sense to me, as

20   Mr. Carroll has said, that this case ought to be resolved

21   because it seems like the essence of your dispute is really

22   about something that doesn't exist right now.  And so to

23   some extent, it seems to me that resolving the dispute

24   that's before -- that exists now shouldn't be driven by

25   resolving a dispute that doesn't exist.  But --

1                 MR. DORSNEY:  Your Honor.

2                 THE COURT:  Yes, Mr. Dorsney.

3                 MR. DORSNEY:  This is Mr. Dorsney again.  If I

4      may, in the context of what you just said, the dispute that

5      exists now is confined by the scope of what we were able to

6      investigate in the course of the discovery, the limited

7      discovery that was allowed in the case.  So I think that

8      that's the roadblock to some of this is that we'd like the

9      dismissal with prejudice to be confined to the actual scope

10     of the case that we were able to investigate.

11                THE COURT:  Yeah.  So what does that mean,

12     Mr. Dorsney?

13                MR. DORSNEY:  As we sit here right now, I think

14     maybe we could try to work out a term sheet or some type of

15     resolution that embodies that scope.  If we could do that

16     then maybe we could have the case dismissed with prejudice,

17     and it would be associated with those sort of settlement

18     terms, that settlement agreement.

19                THE COURT:  Okay.  Well, the only thing I

20     really -- so I don't really have anything more that's

21     possibly useful, assuming anything that I've said at all has

22     been useful.  But what I do think would be good is for you

23     to talk to each other about how you'd like to proceed

24     prioritizing resolving the case, whether it's by settlement

25     agreement, or by dismissal, or whatever it is.  It seems to

1    be a poor vehicle for litigating your disputes.

2              And perhaps the only other thing I'd say, and

3    this is based on something that Mr. Dorsney just said

4    perhaps, if this is true, and I don't know whether it is or

5    not, but if defendant were in a position to represent that

6    at the current time it has no plans to change the accused

7    products.  And you know, you'd obviously have to wordsmith

8    that to say whatever actually was true, that might -- maybe

9    that would help.  It seems to be, and I'm not saying

10   Mr. Isbester actually said this, but it seemed to be kind of

11   implicit that they're working on -- the defendant is selling

12   the product that's accused right now, but I don't know.

13             So can I just ask that, say, in a week or so,

14   assuming you haven't resolved it in the mean time, just send

15   me a status report or, you know, something.  And you know,

16   if the status is you want a new judge, let me know.  If the

17   status is, yeah, we're working on it, need another "X"

18   amount of time, that's fine.  And if the status is, no, we

19   can't possibly resolve this.  We want to go to litigation,

20   but we're happy to have you stay as the judge, you know,

21   just let me know what's happening.

22             Okay?  Is there anything else anybody wants to

23   say before I wish you all a good day?

24             MR. NIXON:  Thank you very much, Your Honor.

25             MR. ISBESTER:  Thank you for your time, Your

1    Honor.

2              THE COURT:  All right.  Well, listen, let me

3    know what's happening in a week, if I haven't found out

4    somehow before then.  And I wish you all luck.

5              All right.  I'm going to hang up.

6              (Everybody said, Thank you, Your Honor.)

7              (Videoconference was concluded at 9:58 a.m.)

8              I hereby certify the foregoing is a true and

9    accurate transcript from my stenographic notes in the

10   proceeding.

11                       /s/ Heather M. Triozzi
                         Official Merit and Real-Time Reporter
12                       U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25